612                    July 22, 2026                    No. 689

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERTO HERNANDEZ,
*Defendant-Appellant.*

Douglas County Circuit Court
23CR27779; A185059

Robert B. Johnson, Judge.

Submitted February 4, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and James Brewer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Affirmed.

## EGAN, J.

Defendant appeals a judgment of conviction for interfering with emergency medical service (EMS) providers, ORS 162.257. Defendant contends that the trial court erred when it denied his motion to dismiss that charge pursuant to a civil compromise under ORS 135.703 and 135.705. We conclude that interfering with an EMS provider is not an offense eligible for civil compromise because ORS 162.257 was designed to protect the public at large and, therefore, is not an offense that injures only a discrete party as is required for civil compromise. Consequently, the trial court properly denied the motion, and we affirm.

## BACKGROUND

Defendant was charged with interfering with EMS providers after he prevented EMS from rendering aid to an injured woman following a vehicular accident.[1] The woman had been driving, and defendant was a passenger. At the crash site, defendant lay on top of the woman and continuously screamed that she needed help.[2] However, when EMS providers tried to render her aid, defendant refused to move and punched an EMS provider once in the chest—though no injury resulted. Defendant was subsequently detained.

Before trial, defendant wrote the EMS provider an apology, and the EMS provider acknowledged in writing that he had received satisfaction for his injuries and agreed to a civil compromise. Defendant moved to dismiss the charge pursuant to that civil compromise, but the trial court denied the motion, reasoning that civil compromise requires that the injured party have a civil cause of action against the defendant for the conduct prohibited by the criminal statute and that no such civil cause of action existed for the conduct prohibited by the offense of interfering with EMS providers. Defendant was convicted at trial.

---

[1] Defendant was also charged with second-degree disorderly conduct, ORS 166.025, but was acquitted of that charge at trial.

[2] Prior to the accident, defendant and the woman had been drinking. When EMS providers arrived, the woman was lying on the ground profusely bleeding and screaming for help. She was later transported to the hospital. Her injuries required four surgeries and being airlifted to an intensive care unit.

On appeal, defendant argues that the trial court erred by denying his motion to dismiss pursuant to a civil compromise. Defendant argues that the EMS provider had a civilly actionable battery claim, and therefore, the acknowledgement of satisfaction of injury between defendant and the EMS provider satisfied the statutory requirements for a civil compromise. In response, the state argues that the public at large, not the EMS provider, is the "injured person," and therefore, an individual EMS provider does not have a civil cause of action for the criminal conduct prohibited by the offense of interfering with EMS providers. We agree with the state that the public is the "injured person" under ORS 162.257 and, thus, affirm.

## ANALYSIS

Whether a trial court correctly determined that a criminal charge is statutorily eligible to be civilly compromised and that it, therefore, had statutory authority to dismiss the charge is a question of law that we review for legal error. *State v. Bayliss*, 331 Or App 492, 497, 546 P3d 298 (2024); *State v. Aguilera*, 324 Or App 478, 479, 526 P3d 1206 (2023). The civil compromise procedure provides an alternative to criminal prosecution by authorizing a trial court, in its discretion, to dismiss a criminal charge when the statutory requirements for civil compromise are met. *State v. Dugger*, 73 Or App 109, 113, 698 P2d 491 (1985). The statutory requirements for civil compromise are set out in ORS 135.703(1) and 135.705: (1) the criminal offense in question is a misdemeanor, (2) the injured party has a civil cause of action for the injury that resulted from the conduct prohibited by the criminal statute that defines the offense, (3) the injured party acknowledges in writing before trial that they have received satisfaction for their injury, and (4) the defendant pays the cost of any incurred expenses. *State v. Bilbao*, 332 Or App 231, 233-34, 549 P3d 593 (2024); *Bayliss*, 331 Or App at 496.

In evaluating those requirements, the identity of the "injured party" is important. To be eligible for compromise, an offense must "affect only persons who have a right to civil redress," because if others are affected who do not have an available civil action, then the requirements cannot

be satisfied. *Dugger*, 73 Or App at 113. That means that for a crime to be subject to civil compromise there "*must* be a *discrete*" injured party. *Id.* at 112 (emphases in original). To determine who the injured party is for purposes of civil compromise, we evaluate the statutory offense to determine if an injury to a discrete party was the sole consequence contemplated by the legislature when it criminalized the underlying behavior. *See State v. Ferguson*, 261 Or App 497, 512-13, 323 P3d 496 (2014) (examining the criminal mischief and harassment statutes to "determine who should be considered a 'person injured' for purposes of the civil compromise statutes"). Acts that "the legislature has criminalized to protect the public at large" cannot be compromised, even if a specific individual is injured, because the "coincidence that any given person is compensably injured by the commission of those acts has no cognizable relationship to the legislature's purpose in criminalizing them." *Dugger*, 73 Or App at 113.

For example, in *Dugger*, the trial court dismissed a public indecency charge after the defendant entered into a civil compromise with the department store in which he exposed his genitals. *Id.* at 109. We reversed, determining that public indecency was not the type of crime that could be civilly compromised because the injury to the department store was not the sole consequence of the exposure, the public was also an injured party, and the legislature's primary objective was to protect the public. *Id.* at 113. Any member of the public who observed the indecent act would be just as entitled to a settlement as the department store. *Id.* Because many members of the public could be entitled to civil redress but would not be subject to a satisfaction agreement, public indecency is not the type of crime that is eligible for civil compromise. *Id.* Similarly, reckless driving cases are not eligible for civil compromise, even if the defendant causes damage to a specific vehicle and driver, because the offense "endanger[s] every person and vehicle on the road," and a civil compromise would not give redress to everyone that was exposed to the harm. *Id.* at 112-13. Because "[b]oth reckless driving and public indecency are acts that the legislature has criminalized to protect the public at large," neither can be civilly compromised. *Id.* In other

words, only crimes "that necessarily injure only a discrete one or more persons—not those that also, and primarily, injure the public at large—are subject to civil compromise."[3] *Ferguson*, 261 Or App at 505.

Conversely, a crime can be civilly compromised if it injures a discrete party, such as the crimes of theft, criminal mischief, and harassment. *See State v. Dumond*, 270 Or 854, 858, 530 P2d 32 (1974) (affirming a trial court's decision to dismiss theft charge pursuant to civil compromise after the defendant paid back the money he stole from his employer); *Ferguson*, 261 Or App at 513, (allowing criminal mischief and harassment charges to be civilly compromised after the defendant paid for the damage he had caused to his employer's truck). The crimes of theft, criminal mischief, and harassment solely injure a discrete party—the party whose property is stolen or who is harassed—and not the public at large. Therefore, civil compromise is proper for crimes of that type because all parties that are injured can be subject to the satisfaction agreement.

At issue is whether the trial court erred in concluding that the offense of interfering with EMS providers is not eligible for civil compromise because the individual EMS provider did not have a civil cause of action for injuries arising out of the conduct prohibited by the statute. In other words, the question is whether the interfering with EMS providers offense was intended to forestall injury to individual EMS providers or to the public at large.

ORS 162.257(1) provides:

"A person commits the crime of interfering with a firefighter or emergency medical services provider if the person, knowing that another person is a firefighter or emergency medical services provider, intentionally acts in a manner that prevents, or attempts to prevent, a firefighter or emergency medical services provider from performing the lawful duties of the firefighter or emergency medical services provider."

_____

[3] Importantly, "[w]e do not suggest that the public's abstract interest in the prosecution of crime prevents the civil compromise of misdemeanors that can do nothing more than cause actual injury to a particular person or persons." *Dugger*, 73 Or App at 113 n 1. Rather, the question is who the legislature aimed to protect from injury.

That statute, defendant argues, contemplates that the EMS provider is the discrete injured party and, therefore, an agreement between himself and the provider satisfied the civil compromise requirements in this case. According to defendant, because the probable cause affidavit included punching the EMS provider in the "act constituting the crime," the EMS provider is the victim and has a civil remedy through a battery claim. Defendant seeks to differentiate ORS 162.257 from reckless driving and public indecency by noting that ORS 162.257 requires the defendant to engage in physical conduct directed at a particular, identified person, namely the EMS provider. *DeNucci v. Henningsen*, 248 Or App 59, 75, 273 P3d 148 (2012) ("ORS 162.257 does not prohibit 'interference' with a firefighter or an emergency medical services provider through speech alone; physical conduct is required for a violation."). We do not find that argument convincing.

We conclude that ORS 162.257 is similar to public indecency and reckless driving because an injury to a discrete person is not the sole consequence of a violation: The statute primarily protects the public at large from harm. ORS 162.257 does not contemplate injury to the EMS provider—it contemplates only interference with official duties. That point is driven home by ORS 163.165(g) which specifically criminalizes injuring an EMS provider while they are performing their lawful duties.[4] We interpret ORS 163.165(g) to do what defendant asserts that ORS 162.257 does: protect the EMS provider from injury. Interfering does not necessarily injure an EMS provider or even put the provider at risk of any injury other than the inability to perform their duties.[5] Rather, ORS 162.257 seeks to ensure that EMS providers can provide emergency medical care without interference.

The risk of not receiving emergency medical care is experienced by the public in the same way as the risk of

_____

[4] Under ORS 163.165(g), a person commits third-degree assault if the person "[i]ntentionally, knowingly or recklessly causes physical injury to an emergency medical services provider, as defined in ORS 682.025, while the emergency medical services provider is performing official duties."

[5] We do not imply nor make any determination that interference with performing duties is a legally cognizable injury.

a collision with a reckless driver is experienced by all people in the area. The EMS provider is not a discrete victim because the interference also, and primarily, harms the person or persons who need emergency medical assistance, for example, the woman on the ground in this case. Therefore, contrary to defendant's assertion, the act of interfering with an EMS provider injures the public, not solely a discrete party, and it is statutorily ineligible for civil compromise.[6]

## CONCLUSION

ORS 162.257 is an offense that primarily injures the public at large and, therefore, cannot be civilly compromised. The trial court did not err in denying defendant's motion.

Affirmed.

---

[6] Because we conclude that the EMS provider's injury is not the sole consequence of a violation under ORS 162.257, we need not reach defendant's argument that a civil battery claim would provide sufficient legal remedy to meet the statutory requirements for civil compromise.